UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
NORTHWESTERN CONSULTANTS, INC.,
a Nevada Corporation, BAY SHORE JOINT
VENTURE, a Nevada Joint Venture,
RUSSELL V. LUGLI, JOHN M. LOEFFLER
and NEAL ZAMIL,

                                    Plaintiffs,

              - against-

ELIOT F. BLOOM, ELIOT F. BLOOM, P.C.,
a professional corporation, ELIZABETH A.
BLOOM, HARRY FEINGOLD, FIRE ISLAND
SEASHELL COMPANY, INC., a New York
corporation d/b/a Savannah Development Co.,
LOUIS LADONNA, ALL SHORES
DEVELOPMENT CO., a New York
Corporation, and DOE DEFENDANTS 1-10,
inclusive,

                                    Defendants.
--------------------------------------------------------X

**OPINION AND ORDER**
**10 CV 5087 (SJF)(AKT)**

**FILED**
IN CLERK'S OFFICE
U S DISTRICT COURT E D N Y

★   MAY 2 2 2012   ★

**LONG ISLAND OFFICE**

FEUERSTEIN, J.

       On November 3, 2010, plaintiffs Northwestern Consultants, Inc. ("Northwestern"), a

Nevada corporation, and Russell V. Lugli ("Lugli") (collectively "plaintiffs"); Bay Shore Joint

Venture ("BSJV"); John M. Loeffler ("Loeffler") and Neal Zamil ("Zamil") commenced this

action against defendants Eliot F. Bloom ("Bloom"), Eliot F. Bloom, P.C., a professional

corporation, and Elizabeth A. Bloom (collectively, "the Bloom defendants"); Harry Feingold

("Feingold") and Fire Island Seashell Company, Inc. ("FIS Co."), a New York corporation d/b/a

Savannah Development Co. (collectively, "the Feingold defendants"); Louis LaDonna

("LaDonna"); All Shores Development Co. ("All Shores"), a New York corporation; and "Doe

1

Defendants 1-10,"[1] alleging claims, *inter alia*, for "unlawful sale of securities," conspiracy, breach of contract, fraud, negligent misrepresentation, rescission, unjust enrichment, breach of fiduciary duty and "financial elder abuse." The Bloom defendants filed their answer to the complaint on November 23, 2010 and Feingold filed a *pro se* motion to dismiss the complaint pursuant to Rule 12(b) of the Federal Rules of Civil Procedure on December 30, 2010[2].

On April 15, 2011, plaintiffs moved pursuant to Rule 15(a) of the Federal Rules of Civil Procedure to amend the complaint, *inter alia*, (1) to withdraw the claims (a) asserted on behalf of Loeffler and Zamil, both of whom indicated that they did not wish to prosecute the claims asserted on their behalf in this action, without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure,[3] and (b) asserted on behalf of BSJV without prejudice pursuant to Rule

---

[1] Plaintiffs have voluntarily withdrawn their claims against two (2) additional defendants, Frank Johnston ("Johnston") and Larry Snider ("Snider"), with prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. Accordingly, the branch of plaintiffs' motion seeking to amend the complaint to dismiss all claims against Johnston and Snider is granted and the complaint is dismissed in its entirety with prejudice as against Johnston and Snider pursuant to Rule 41(a) of the Federal Rules of Civil Procedure. Since plaintiffs' fourth cause of action in the amended complaint seeks damages against only Johnston for breach of contract, that cause of action is dismissed in its entirety with prejudice. In addition, the proposed amended complaint does not name All Shores, the company in which Johnston was the sole shareholder, director and officer, (Compl., ¶ 2.13), or the Doe defendants in the caption and contains no allegations against those defendants. Accordingly, plaintiffs are deemed to have voluntarily withdrawn their claims against All Shores and the Doe defendants with prejudice as well.

[2] On January 18, 2011, Northwestern filed a suggestion of death as to Feingold. By order dated September 1, 2011, the Honorable Joseph F. Bianco, United States District Judge, to whom this action was previously assigned, denied Feingold's *pro se* motion to dismiss the complaint as against him without prejudice to renewal (a) after the issue of subject matter jurisdiction was determined by the Court and (b) if a party was substituted for Feingold pursuant to Rule 25(a)(1) of the Federal Rules of Civil Procedure.

[3] During a conference before Judge Bianco on March 22, 2011, it was noted that plaintiffs' counsel does not represent Loeffler and Zamil in this action. In their motion to amend, plaintiffs indicate that Loeffler and Zamil "have asked to be removed from this action."

41(a)(2) of the Federal Rules of Civil Procedure; and (2) to substitute the Estate of Harry

Feingold for Feingold, deceased, pursuant to Rule 25(a) of the Federal Rules of Civil Procedure.

Thereafter, the Bloom defendants cross-moved to dismiss the complaint (1) pursuant to Rule

12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or, (2) in

the alternative, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to

join an indispensable party. This action was reassigned to me on January 9, 2012, after Judge

Bianco recused himself and before any determination on the pending motions. For the reasons

set forth below, plaintiffs' motion is granted in its entirety and the Bloom defendants' cross

motion is denied in its entirety.


I.      Background[4]

        A.      Factual Background

                1.      The Parties

                        a.      Plaintiffs

Northwestern is a Nevada corporation with its principal place of business in the State of

California. (Compl., ¶ 2.1). Lugli is the CEO and president of Northwestern who, at all relevant

times, resided in the State of California. (Compl., ¶ 2.2).

        BSJV is a Nevada partnership between Northwestern and Bloom created for the purpose

---

(Combined Affirmation of John E. Lawlor Esq. and Memorandum of Law in Support of Motion
to Amend the Complaint ["Lawlor Aff."], ¶ 3). Accordingly, the branch of plaintiffs' motion
seeking to amend the complaint to withdraw all claims asserted on behalf of Loeffler and Zamil
is granted and all claims asserted on behalf of Loeffler and Zamil in this action are hereby
dismissed without prejudice pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

        [4] The following facts are taken from the pleadings and do not constitute findings of fact
by the Court.

of undertaking the "financing, land development, construction, and sale of 24 entry level housing style housing units" on property owned by Northwestern and designated as lots 59A and 59B Second Avenue, Bay Shore, New York ("the subject property"). (Compl., ¶¶ 2.4, 3.1, Ex. A).

b.　　Defendants

Bloom is a resident of the State of New York and an attorney admitted to practice in the State of New York with a principal place of business in the State of New York. (Bloom Ans., ¶ 3). Plaintiffs allege: (1) that between March 22, 2006 and May 10, 2006, Bloom undertook to represent the interests of Northwestern and BSJV as their attorney in the State of New York, (Compl., ¶ 2.5); and (2) that Bloom is the sole shareholder and officer of the Law Offices of Eliot F. Bloom, P.C., and is the "control" person of that entity as defined in Section 20 of the Securities Act of 1934 ("the Securities Act"). (Compl., ¶ 2.6).

Elizabeth Bloom is Bloom's wife and is also a resident of the State of New York. (Compl., ¶ 2.7; Bloom Ans., ¶ 5).

Plaintiffs allege, *inter alia*: (1) that at all relevant times, Feingold was (a) a resident of the State of New York, (b) the sole shareholder and officer of FIS Co. and the "control" person of FIS Co. as defined in Section 20 of the Securities Act, (Compl., ¶ 2.8), (c) the vice president and forty-nine percent (49%) shareholder of Northwestern, (Compl., ¶¶ 5.3, 7.2.B(2), 8.4, 19.7), and (d) Lugli's investment advisor, (Compl., ¶¶ 19.5-19.6, 20.2-20.18); (2) that LaDonna is a resident of the State of New York who, at all relevant times, did business under the name of "LaDonna Properties," (Compl., ¶ 2.11); and (3) that Snider is a resident of the State of New York who, on or about October 5, 2007, purchased an interest in BSJV, (Compl., ¶ 2.12).

2.    The Securities Sales

Plaintiffs allege that in March 2005 and on September 6, 2005, respectively, Bloom, as

attorney for Loto World, Inc. ("LWI") and Raven Global Security, Inc. ("Raven"), both Nevada

corporations, caused those companies to file articles of incorporation with the Secretary of State

for the State of Nevada. (Compl., ¶¶ 5.1, 8.7). According to plaintiffs, both LWI and Raven

were also authorized to do business, and had their principal places of business, in the State of

California. (Compl., ¶¶ 5.1, 8.13).

Plaintiffs allege, *inter alia*: (1) that in March or April 2006, Feingold introduced Lugli to

Bloom with the intent to persuade Lugli, through Northwestern, to invest in the common stock of

LWI, (Compl., ¶¶ 8.1, 8.10, 19.8); (2) that from March or April 2006 until June 2009, Bloom

acted as plaintiffs' attorney, (Compl., ¶ 8.6); and (3) that Bloom and Feingold participated in a

"scheme" relating to the sale of securities pursuant to which, *inter alia*, (a) they advised Lugli

that Bloom "had a very unique investment opportunity to purchase stock in [LWI and Raven],"

(Compl., ¶¶ 5.1, 5.4-5.5, 7.2), (b) they made certain representations and misrepresentations to

plaintiffs about LWI and Raven in order to induce them to purchase securities in those

companies, (Compl., ¶¶ 8.11-8.12, 8.14.A-8.15, 8.18-8.20, 12.2), and (c) they agreed to split the

proceeds of plaintiffs' investments and to conceal the true facts of the securities sales from

plaintiffs, (Compl., ¶¶ 7.2(4) and (7), 8.16, 8.20). According to plaintiffs, Lugli, on behalf of

Northwestern and in reliance upon Bloom's and Feingold's representations: (1) purchased six

hundred thousand (600,000) shares of LWI's common stock for a total amount of three hundred

thirty thousand dollars ($330,000.00) between April 28, 2006 and July 19, 2006; and (2)

5

purchased one million shares (1,000,000) of common stock in Raven for the total amount of one hundred fifteen thousand dollars ($115,000.00) on August 14, 2006. (Compl., ¶¶ 5.2, 8.16, 12.3-12.6).

Plaintiffs further allege, *inter alia*: (1) that Bloom (a) had been issued "promotional stock" i.e., shares of LWI's common stock, in consideration for his promise to provide legal services for LWI and Raven, (b) had paid no other consideration to receive that promotional stock and (c) had informed them that he would sell them some of his promotional shares at a mutually agreeable price, but had actually "intended at all times * * * [to] simply issue new certificates from the stock books of the corporations and keep the proceeds realized from sale of the common stock of either corporation," (Compl., ¶¶ 5.8-5.9, 7.2(5), 8.20); (2) that none of the shares of common stock issued by LWI or Raven had ever been registered with any federal or state jurisdiction, (Compl., ¶ 5.10); and (3) that Bloom and Feingold had advised them (a) that such registration was not required and (b) that Bloom was under no restriction in selling his promotional stock. (Compl., ¶¶ 7.2(6), 8.20). According to plaintiffs, they did not discover Bloom's misrepresentations until April or May of 2009. (Compl., ¶ 8.22).


3.     The Property Sale and Joint Venture Agreement

Plaintiffs allege that pursuant to a May 2006 oral joint venture agreement between Northwestern and Bloom: (1) Northwestern was (a) to purchase the subject property in its own name for the purpose of developing it into a condominium property for sale to the general public by BSJV and (b) to be the borrower for the construction loan related to the development of the subject property; and (2) Bloom was to be given a forty percent (40%) interest in BSJV.

(Compl., ¶¶ 3.1, 7.2.B). According to plaintiffs, Bloom and Feingold participated in a "scheme" relating to the sale of the subject property, pursuant to which, *inter alia*: (1) they made certain representations to Northwestern upon which it relied in agreeing to form BSJV, including, *inter alia*, the Bloom had connections which would enable him to facilitate the purchase of the subject property, (Compl., ¶¶ 3.2, 7.2.B(1), 19.8); (2) they agreed (a) to conceal the facts about the initial purchase of the subject property by LaDonna and their involvement therein from plaintiffs [5], (Compl., ¶ 7.2.B(4)), and (b) to divide any money raised, but not required to actually effect the purchase of the subject property, between themselves, (Compl., ¶ 7.2B(5)); and (3) Feingold had advised Lugli that Northwestern needed to wire Bloom the sum of three hundred fifty thousand dollars ($350,000.00) for the purchase of the subject property, (Compl., ¶ 4.3). Northwestern wired the amount of three hundred fifty thousand dollars ($350,000.00) to the trust account of Bloom on or about May 5, 2006. (Compl., ¶¶ 4.4, 10.2; Bloom Ans., ¶ 25).

Plaintiffs allege that some time prior to May 10, 2006, Bloom arranged with LaDonna to assign all of his contract rights to the subject property to Northwestern. (Compl., ¶ 4.5). According to plaintiffs: (1) on May 10, 2006, LaDonna executed an assignment of his interests in

---

[5] Plaintiffs allege that in December 2005, Bloom, Feingold and LaDonna participated in a transaction to purchase the subject property. (Compl., ¶ 4.1). According to plaintiffs, on January 25, 2006, LaDonna entered into an agreement with BMI Realty, Inc. ("BMI") to purchase the subject property for a total amount of three hundred fifty thousand dollars ($350,000.00), with a down payment of seventeen thousand five hundred dollars ($17,500.00). (Id.) Plaintiffs allege that LaDonna, Bloom, Feingold and another individual, James Jackson, entered into another agreement for the purchase of the subject property, which would be developed using JEL Development Group, Inc., a New York corporation. (Compl., ¶ 4.2). According to plaintiffs, each of those individuals contributed capital towards the down payment and other initial costs of the property and Bloom "started making inquiries at the local level as early as December 20, 2005[] and * * *represented himself to third parties as the attorney for the 'owner' of the [subject property]." (Id.)

the subject property to Northwestern; (2) on or about May 12, 2006, Bloom, as attorney for Northwestern, paid LaDonna the sum of three hundred thousand dollars ($300,000.00) from the trust funds of Northwestern as consideration for the LaDonna assignment; and (3) shortly before August 1, 2006, Feingold and Bloom advised Lugli that Northwestern was required to deposit an additional four hundred thousand dollars ($400,000.00) to complete the purchase of the subject property.

Plaintiffs allege that on or about August 3, 2006: (1) Northwestern wired (a) the additional four hundred thousand dollars ($400,000.00) to the trust account of Bloom and (b) an additional seventeen thousand five hundred dollars ($17,500.00) to Bloom's trust account, upon Bloom's request, as purported reimbursement to "the original buyer" for his down-payment on the subject property, (Compl., ¶¶ 4.5-4.7, 10.2); and (2) LaDonna executed a Bargain & Sale Deed to Northwestern, which was not recorded until September 5, 2006, (Compl., ¶ 4.8, Ex. G; Bloom Ans., ¶ 28). In addition, plaintiffs allege that in reliance upon advice by Feingold and Bloom that the purchase of a lot adjacent to the subject property ("Lot 26") would be beneficial to the development and sale of the subject property, Northwestern delivered fifty thousand dollars ($50,000.00) to the seller of Lot 26 in exchange for title to that property. (Compl., ¶ 4.9). Thus, plaintiffs allege that they acquired the subject property, inclusive of Lot 26, for a total price of seven hundred sixty-two thousand five hundred dollars ($762,500.00), (Compl., ¶ 4.10).

Plaintiffs allege that Bloom prepared a written Joint Venture Agreement establishing BSJV, (Compl., ¶ 3.1), which was signed by Bloom and on behalf of Northwestern on August 15, 2006. (Compl., Ex. A). Pursuant to the written Joint Venture Agreement, *inter alia*: (1) Northwestern was granted a fifty-five percent (55%) interest and Bloom was granted a forty-five

percent (45%) interest in BSJV and in BSJV's "equity ownership interest" in the subject property, and the profits and losses of BSJV were to be allocated in accordance with those percentages; and (2) Northwestern agreed to hold its one hundred percent (100%) ownership interest in the subject property in trust for BSJV. (Compl., Ex. A).

The written Joint Venture Agreement was amended, effective February 5, 2007, to provide Johnston with half of Northwestern's interest, i.e., twenty-seven and a half percent (27.5%), in BSJV ("the Johnston Amendment"). (Compl., ¶ Ex. C). According to plaintiffs, Bloom prepared the Johnston Amendment as counsel for Northwestern. (Compl., ¶ 3.7). Plaintiffs allege, *inter alia*, that Feingold had made certain misrepresentations to Lugli upon which he relied in agreeing to and signing the Johnston Amendment. (Compl., ¶¶ 3.5-3.6; 7.2.C and 11.2-11.3).

Plaintiffs allege that between February 5, 2007 and October 5, 2007: (1) Feingold, Bloom and Johnston recommended to Lugli that Snider be permitted to buy-in to BSJV, (Compl., ¶ 3.8); and (2) Feingold advised Lugli that Bloom wanted to withdraw from BSJV in order to raise capital to fund his wife's political campaign, (Compl., ¶ 3.10). On September 28, 2007, Bloom prepared an agreement ("the Withdrawal Amendment") transferring his forty-five percent (45%) interest in BSJV to plaintiffs in consideration for Northwestern's promise to pay Bloom four hundred fifty thousand dollars ($450,000.00) in three (3) installments, with the first installment of one hundred thousand dollars ($100,000.00) due on the date the Withdrawal Amendment was signed and the last installment due on or before October 1, 2008. (Compl., ¶¶ 3.10, 7.2.D, Ex. E). Plaintiffs allege that Bloom signed the Withdrawal Amendment on October 5, 2007, but Lugli, individually and on behalf of Northwestern, did not sign it until December 5, 2007.

(Compl., ¶ 3.11). Although Bloom received the initial installment of one hundred thousand dollars ($100,000.00) contemplated in the Withdrawal Amendment, (Compl., ¶ 3.15), plaintiffs never paid the remaining two (2) installments, totaling three hundred fifty thousand dollars ($350,000.00), to Bloom under the Withdrawal Amendment.

On December 12 and 18, 2007, respectively, Lugli, on behalf of Northwestern, and Snider,[6] executed a "First Amended and Restated Joint Venture Agreement" ("the Snider Buy-In Amendment"), indicating that it became effective on November 1, 2007, which had been prepared by Bloom. (Compl., ¶ 3.8, Ex. D). Pursuant to the Snider Buy-In Amendment, *inter alia*: (a) Northwestern was to be granted a sixty-two and a half percent (62.5%) interest, Johnston was to retain his twenty-seven and a half percent (27.5%) interest and Snider was to be granted a ten percent (10%) interest in BSJV; and (b) the parties acknowledged that as of the date the Snider Buy-In Amendment was signed, BSJV was obligated to pay Bloom the amount of three hundred fifty thousand dollars ($350,000.00). (Compl., Ex. D). According to plaintiffs: (1) Feingold informed Lugli that Snider agreed to pay one hundred thousand dollars ($100,000.00) in consideration for the Snider Buy-In Amendment; (2) Snider delivered the consideration for the Snider Buy-In Amendment to Feingold on October 6, 2007; (3) Feingold deposited the entire amount paid by Snider into the account of FIS Co., without the knowledge or consent of Lugli; and (4) between October 9, 2007 and October 11, 2007, Feingold, acting on Bloom's instruction, wired part of the amount received from Snider into the Washington Mutual account of Bloom's wife and kept the remainder for himself. (Compl., ¶¶ 3.9, 3.13, 7.2.D).

---

[6] It is unclear with Johnston ever signed the Snider Buy-In Amendment.

10

B.    Procedural Background

On or about June 28, 2009, plaintiffs commenced an action relating to the claims asserted in this action in the Superior Court of the State of California ("the California state court action").[7] Although plaintiffs subsequently filed an amended complaint in the California state court action, they thereafter voluntarily dismissed the California state court action[8] and commenced this action on November 3, 2010. In this action, plaintiffs allege, *inter alia*: (1) that Bloom and Feingold made material misrepresentations in the issuance and sale of securities to Northwestern, resulting in damages to it in the amount of four hundred forty-five thousand dollars ($445,000.00), (first cause of action)[9]; (2) that Bloom, Feingold and FSI Co. entered into a conspiracy to illegally

---

[7] Shortly after plaintiffs commenced the action in the California state court, Bloom commenced an action against plaintiffs in the Supreme Court of the State of New York, County of Nassau ("the New York state court"), seeking to recover money allegedly owed to him under the Withdrawal Amendment. By order entered November 19, 2009, the New York state court granted Bloom summary judgment in the principal sum of three hundred fifty thousand dollars ($350,000.00). However, on appeal, the Supreme Court of the State of New York, Appellate Division, Second Judicial Department, reversed the order and judgment of the New York state court and denied Bloom's motion for summary judgment, finding, *inter alia*: (1) that Bloom had failed to establish that the Withdrawal Amendment was an instrument for the payment of money only since the sale of Bloom's interest in BSJV "was subject to the continuation by [Bloom] of his legal representation of [plaintiffs] and [BSJV];" and (2) that, "[t]herefore, outside proof [was] required to determine if [Bloom] satisfied his obligations pursuant to the [Withdrawal Amendment]." Bloom v. Lugli, 81 A.D.3d 579, 916 N.Y.S.2d 139 (2d Dept. 2011).

[8] Plaintiffs contend that they discontinued the California state court action because Bloom "had stone-walled [them] in their discovery efforts in [that action], when all of the Defendants and most of the witnesses were located here in New York * * *." (Affidavit of Russell V. Lugli in Opposition to Cross-Motion to Dismiss the Amended Complaint ["Lugli Opp."], ¶ 12).

[9] The first cause of action asserted in the proposed amended complaint also seeks damages against Bloom and Feingold for fraud based upon the sale of securities to Northwestern. (Amend. Compl., ¶¶ 48-69).

11

issue securities to plaintiffs (second cause of action)[10]; (3) that Bloom breached the Joint Venture Agreement and Withdrawal Amendment (third cause of action)[11]; (4) that Bloom and Feingold, with the active participation of LaDonna, fraudulently induced (fifth cause of action), or made negligent misrepresentations to (seventh cause of action), plaintiffs (i) to purchase the subject property, (ii) to enter into the Joint Venture Agreement and the Johnston Amendment, the Snider Buy-In Amendment and the Withdrawal Amendment (collectively, "the related Amendments"), and/or (iii) to purchase securities in LWI and Raven;[12] (5) (a) that Bloom and Feingold entered into a conspiracy to commit fraud with respect to the sale of securities and (b) that Bloom, Feingold and LaDonna entered into a conspiracy to commit fraud with respect to the Joint Venture Agreement (sixth cause of action)[13]; (6) that Bloom, his wife, Feingold and LaDonna were unjustly enriched in the amount of all funds received by them under false pretenses and/or

---

[10] The second cause of action asserted in the proposed amended complaint also seeks damages against Bloom and Feingold based upon a purported conspiracy to sell Northwestern illegal securities. (Amend. Compl., ¶¶ 70-76).

[11] The third cause of action asserted in the proposed amended complaint also seeks damages against Bloom for breach of the Joint Venture Agreement and the Withdrawal Amendment. (Amend Compl., ¶¶ 77-88). In addition, plaintiffs seek, *inter alia*, "cancellation of the Withdrawal [Amendment]." (Amend. Compl., at 47, ¶ D).

[12] The fourth cause of action asserted in the proposed amended complaint also seeks compensatory and punitive damages against Bloom, Feingold, FIS Co. and LaDonna for fraudulent inducement, (Amend. Compl., ¶¶ 89-97), and the sixth cause of action asserted in the proposed amended complaint also seeks damages against Bloom, Feingold and FIS Co., for negligent misrepresentations relating, *inter alia*, to the "making [of] promises of future services related to the formation of [BSJV]." (Amend. Compl., ¶¶ 106-108).

[13] The fifth cause of action in the proposed amended complaint also seeks compensatory and punitive damages against Bloom, Feingold and LaDonna based upon a purported conspiracy to commit fraud "related to the formation and operation of [BSJV]." (Amend. Compl., ¶¶ 98-105).

in breach of their fiduciary duties to plaintiffs (ninth cause of action)[14] ; (7) that Feingold is in breach of a promissory note to Lugli (eleventh cause of action)[15]; (8) that Feingold and Bloom "took undue advantage of LUGLI's age and trust in them and enriched themselves through the operation of the frauds * * * alleged" (twelfth cause of action)[16]; and (9) that Feingold breached his fiduciary duty as Lugli's investment advisor (thirteenth cause of action).[17] Plaintiffs seek: (1) compensatory damages (first, second, third, fifth, sixth, seventh, eleventh, twelfth and thirteenth causes of action); (2) punitive damages in the amount of five million dollars ($5,000,000.00) (fifth and sixth causes of action); (3) rescission (a) of the Joint Venture Agreement and related Amendments and (b) of the securities transactions (third and eighth causes of action)[18]; (4) disgorgement of all funds by which defendants were unjustly enriched (ninth cause of action); (5) a declaration of the rights and duties of the parties under the Withdrawal Amendment (tenth cause of action)[19]; (6) referral of Bloom and Feingold for criminal prosecution with respect to

---

[14] In the eighth cause of action in the proposed amended complaint, plaintiffs also seek disgorgement of all funds "unjustly obtained under false pretenses and in breach of fiduciary duties owed to plaintiffs." (Amend. Compl., ¶¶ 114-116).

[15] The tenth cause of action in the proposed amended complaint also seeks damages against Feingold for breach of a promissory note. (Amend. Compl., ¶¶ 122-128).

[16] The eleventh cause of action in the proposed amended complaint also asserts a claim against Feingold and Bloom for "financial elder abuse." (Amend. Compl., ¶¶ 129-140).

[17] The twelfth cause of action in the proposed amended complaint also seeks damages against Feingold for breach of fiduciary duty. (Amend. Compl., ¶¶ 141-159).

[18] In the seventh cause of action in the proposed amended complaint, plaintiffs also seek rescission of the sale of the subject property to Northwestern and of the Joint Venture Agreement and related Amendments. (Amend. Compl. ¶¶ 109-113, at 48, ¶ G).

[19] In their ninth cause of action in the proposed amended complaint, plaintiffs also seek judgment declaring the parties' respective rights and obligations under the Withdrawal Amendment, including, *inter alia*, judgment declaring that the Withdrawal Amendment "has

Lugli's claims of elder abuse (twelfth cause of action); and (7) costs and attorney's fees.

Pending before the Court are: (1) plaintiffs' motion seeking to amend the complaint pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, *inter alia*, (a) to dismiss the claims asserted on behalf of BSJV without prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure and (b) to substitute the Estate of Harry Feingold for Feingold, deceased, pursuant to Rule 25(a) of the Federal Rules of Civil Procedure; and (2) the Bloom defendants' cross motion to dismiss the complaint (a) pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction or (b), in the alternative, pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure for failure to join an indispensable party.

II.    Discussion

     A.    Standard of Review

          1.    Rule 12(b)(1)

Federal courts are courts of limited jurisdiction, see Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012); Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 552, 125 S.Ct. 2611, 162 L.Ed.2d 502 (2005), and may not preside over cases absent subject matter jurisdiction. See Exxon Mobil, 545 U.S. at 552, 125 S.Ct. 2611 (holding that federal courts may not exercise jurisdiction absent a statutory basis); Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994) (holding that federal courts "possess only that power authorized by Constitution and statute * * *."); County of Nassau, N.Y. v. Hotels.com, LP, 577 F.3d 89, 91 (2d Cir. 2009) (holding that federal

_____

been avoided by the filing of this action." (Amend. Compl., ¶¶117-121, at 49, ¶ I).

courts lack power to disregard the limits on their jurisdiction imposed by the Constitution or Congress). Lack of subject matter jurisdiction cannot be waived or forfeited and may be raised at any time by a party or by the court *sua sponte*. See Gonzalez v. Thaler, 132 S. Ct. 641, 648, 181 L. Ed. 2d 619 (2012); see also Henderson ex rel. Henderson v. Shinseki, 131 S. Ct. 1197, 1202, 179 L.Ed.2d 159 (2011) ("[F]ederal courts have an independent obligation to ensure that they do not exceed the scope of their jurisdiction, and therefore they must raise and decide jurisdictional questions that the parties either overlook or elect not to press. * * * Objections to subject matter jurisdiction * * * may be raised at any time.") If a court lacks subject matter jurisdiction, it must dismiss the action. See Fed. R. Civ. P. 12(h)(3); Arbaugh v. Y & H Corp., 546 U.S. 500, 514, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006); Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. Dupont, 565 F.3d 56, 62-3 (2d Cir. 2009).

2.      Rule 12(b)(7)

Rule 12(b)(7) authorizes dismissal of a pleading for "failure to join a party under Rule 19 [of the Federal Rules of Civil Procedure]." "Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether the missing party is necessary within the meaning of Fed. R. Civ. P. 19." Johnson v. Smithsonian Institute, 189 F.3d 180, 188 (2d Cir. 1999).

B.      Subject Matter Jurisdiction

Plaintiffs allege in the original complaint that jurisdiction is based upon both the Court's federal question jurisdiction pursuant to 28 U.S.C. § 1331 and the Court's diversity jurisdiction pursuant to 28 U.S.C. § 1332(a). (Compl., ¶ 1.0).

1. Federal Question Jurisdiction

28 U.S.C. § 1331, which provides the basis for federal question jurisdiction, states that

"[t]he district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws, or treaties of the United States." The "well-pleaded complaint" rule

determines whether an action arises under the Constitution, laws, or treaties of the United States.

See Vaden v. Discover Bank, 556 U.S. 49, 60, 129 S. Ct. 1262, 173 L. Ed. 2d 206 (2009);

Franchise Tax Bd. of State of California v. Construction Laborers Vacation Trust for Southern

California, 463 U.S. 1, 9-10, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); Romano v. Kazacos, 609

F.3d 512, 518 (2d Cir. 2010). Pursuant to the "well-pleaded complaint" rule,

> Whether a case is one arising under the Constitution or a law or treaty of the
> United States, in the sense of the jurisdictional statute, * * * must be determined
> from what necessarily appears in the plaintiff's statement of his own claim in the
> bill or declaration, unaided by anything alleged in anticipation of avoidance or
> defenses which it is thought the defendant may interpose."

Franchise Tax Bd., 463 U.S. at 10, 103 S.Ct. 2841 (citing Taylor v. Anderson, 234 U.S. 74, 75-

76, 34 S.Ct. 724, 58 L.Ed.2d 1218 [1914]); see also Vaden, 556 U.S. at 60, 129 S. Ct. 1262

(holding that under the well-pleaded complaint rule, "a suit 'arises under' federal law only when

the plaintiff's statement of his own cause of action shows that it is based upon federal law. * * *

Federal jurisdiction cannot be predicated on an actual or anticipated defense * * * [or]

counterclaim." (quotations, alterations and citations omitted)). Even in cases in which state law

creates the plaintiff's causes of action, the case "might still 'arise under' the laws of the United

States if a well-pleaded complaint established that its right to relief under state law requires

resolution of a substantial question of federal law in dispute between the parties." Franchise Tax

Bd., 463 U.S. at 13, 103 S.Ct. 2841; see also Bracey v. Board of Education of City of Bridgeport,

368 F.3d 108, 113 (2d Cir. 2004) ("If the plaintiff's statement of his or her state-law claim in a

well-pleaded complaint necessarily depends on resolution of a substantial question of federal law

* * *, then the case may * * * arise under federal law within the meaning of Section 1331."

(quotations and citations omitted)). In other words, federal courts have original federal question

jurisdiction only where "a well-pleaded complaint establishes either that federal law creates the

cause of action or that the plaintiff's right to relief necessarily depends on resolution of a

substantial question of federal law." Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S.

677, 690, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006) (5-4 decision) (quoting Franchise Tax Bd.,

463 U.S. at 27-28, 103 S.Ct. 2841); Perpetual Securities, Inc. v. Tang, 290 F.3d 132, 137 (2d Cir.

2002).

Although plaintiffs reference the Securities Act in their complaint, they do not allege that

any defendant violated that, or any other, federal statute or the United States Constitution, nor is

a substantial question of federal law implicated in this action. Indeed, in the proposed amended

complaint, plaintiffs effectively concede that this Court lacks federal question jurisdiction insofar

as they allege jurisdiction only "under 28 U.S.C. § 1331(a) [sic] in that the amount in controversy

exceeds $75,000.00 and is among citizens of different states." (Proposed Amended Complaint

["Amend. Compl."], ¶ 1). Since it is clear from the face of the complaint that none of the causes

of action asserted therein arise under the United States Constitution or federal law, this Court

does not have federal question jurisdiction under 28 U.S.C. § 1331.


2.      Diversity of Citizenship

Thus, this Court only has jurisdiction over this action if there is diversity of citizenship

under 28 U.S.C. § 1332(a).

"[T]he jurisdiction of the court depends upon the state of things at the time of the action brought." Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570, 124 S.Ct. 1920, 158 L.Ed.2d 866 (2004) (quoting Mollan v. Torrance, 22 U.S. 537, 6 L.Ed. 154, 9 Wheat. 537, 539 (1824)); see also Rockwell Intern. Corp. v. U.S., 549 U.S. 457, 473, 127 S. Ct. 1397, 167 L. Ed. 2d 190 (2007). This "time-of-filing" rule "measures all challenges to subject-matter jurisdiction premised upon diversity of citizenship against the state of facts that existed at the time of filing [of the complaint]- whether the challenge [to jurisdiction] be brought shortly after filing, after the trial, or even for the first time on appeal." Grupo, 541 U.S. at 570-571, 124 S.Ct. 1920; see also Herrick Co., Inc. v. SCS Communications, Inc., 251 F.3d 315, 329 (2d Cir. 2001) ("The existence of federal jurisdiction over a case initially filed in federal court ordinarily depends on the facts as they stood when the complaint was filed.") Since jurisdiction is measured as of the time the complaint was filed, events occurring subsequently are irrelevant to a determination of subject matter jurisdiction.

Section 1332 "require[s] complete diversity between all plaintiffs and all defendants." Lincoln Property Co. v. Roche, 546 U.S. 81, 89, 126 S. Ct. 606, 163 L. Ed. 2d 415 (2005); see also Herrick Co., 251 F.3d at 322 ("[D]iversity jurisdiction is available only when all adverse parties to a litigation are completely diverse in their citizenships.") "[I]t is well established that the party seeking to invoke jurisdiction under 28 U.S.C. § 1332 bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete." Herrick Co., 251 F.3d at 322-323; see also Universal Licensing Corp. v. Paola del Lungo S.p.A., 293 F.3d 579, 581 (2d Cir. 2002) ("[T]he party invoking federal jurisdiction bears the burden of proving

facts to establish that jurisdiction." (quotations and citation omitted)).

### a. Citizenship of Individuals

"An individual's citizenship * * * is determined by his domicile. * * * Domicile is the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000). Thus, it is clear that for purposes of diversity jurisdiction, at the time this action was commenced, Lugli, the sole remaining individual plaintiff, was a citizen of California and all of the individual defendants were citizens of New York.

### b. Citizenship of Corporations

A corporation is "deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business * * *." 28 U.S.C. § 1332(c)(1); see also In re Balfour MacLaine International Ltd., 85 F.3d 68, 76 (2d Cir. 1996) ("A corporation has dual citizenship for purposes of a federal court's diversity jurisdiction under 28 U.S.C. § 1332; namely, it is a citizen of the state of its incorporation and of the state where it has its principal place of business.") Accordingly, in order for there to be complete diversity of citizenship, a corporate plaintiff cannot be incorporated, nor have its principal place of business, in the same state in which any defendant is a citizen at the time the action is filed. Drake v. Laboratory Corp. of America Holdings, 323 F.Supp.2d 449, 451 (E.D.N.Y. 2004); see also IGY Ocean Bay Properties, Ltd. v. Ocean Bay Properties I Ltd., 534 F.Supp.2d 446, 449 (S.D.N.Y. 2008) (holding that "[t]here is no warrant for the Court, no more than there is for either side of the

parties, to pick and choose and to look solely at the principal place of business or solely at the state of incorporation to determine that diversity exists.") Thus, for purposes of diversity jurisdiction, at the time this action was commenced, Northwestern, the corporate plaintiff, was a citizen of the States of Nevada, where it was incorporated, and California, where it had its principal place of business, and Eliot F. Bloom, P.C. and FIS Co., the remaining corporate defendants, were citizens of the State of New York, where they were incorporated and had their principal places of business.

c.    Citizenship of Joint Ventures

Unlike corporations, the citizenship of an unincorporated association, e.g., a partnership or joint venture, is the citizenship of all of its members. See Grupo Dataflux, 541 U.S. at 569, 124 S. Ct. 1920 (holding that a partnership "is a citizen of each State * * * of which any of its partners is a citizen."); Schiavone Construction Co. v. City of New York, 99 F.3d 546, 548 (2d Cir. 1996) ("For diversity purposes, the citizenship of a joint venture is the citizenship of each of its members."); Keith v. Black Diamond Advisors, Inc., 48 F.Supp.2d 326, 329 (S.D.N.Y. 1999) (holding that joint ventures "are not citizens at all and therefore a court must look to the citizenship of each partner or member of the [venture]."); Varlotta Construction Corp. v. Carla Development Corp., 886 F. Supp. 315, 317 (E.D.N.Y. 1995) ("[U]nincorporated associations such as joint ventures are citizens of every State in which their members are citizens.") Neither the principal place of business of an unincorporated association, nor the State in which that association was formed, are relevant for purposes of diversity jurisdiction. See, e.g. Woodward v. D.H. Overmyer Co., 428 F.2d 880, 883 (2d Cir. 1970); Mackason v. Diamond Financial LLC,

20

347 F. Supp. 2d 53, 55 (S.D.N.Y. 2004); Bamco 18 v. Reeves, 675 F. Supp. 826, 831 (S.D.N.Y. 1987). Accordingly, for purposes of diversity jurisdiction, at the time this action was commenced, BSJV was a citizen of the State of California, in which Lugli was a citizen, and the State of New York, in which Snider, an undisputed member of BSJV at the time this action was commenced, was a citizen[20]. Thus, the presence of BSJV as a plaintiff in this action defeats this Court's diversity jurisdiction. See, e.g. Herrick Co., 251 F.3d at 329 (holding that, generally, federal jurisdiction over a case would be invalid *ab initio* if the plaintiff fails to demonstrate that complete diversity existed at the time it filed its initial complaint).

d.      Exceptions to "Time-of-Filing" Rule

Two (2) exceptions exist to the "time-of-filing" rule, which "allow federal courts, under certain circumstances to cure defects of federal jurisdiction." Herrick Co., 251 F.3d at 329; see also Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830, 109 S. Ct. 2218, 104 L. Ed. 2d 893 (1989). The first exception allows a plaintiff to cure a jurisdictional defect in his complaint "by establishing *ex post* the original existence of the required jurisdictional facts." Herrick Co., 251 F.3d at 329. The second exception allows the court to dismiss "jurisdictional spoilers, *nunc pro tunc*, pursuant to Fed. R. Civ. P. 21." Id.

Plaintiffs invoke only the second exception in seeking to amend their complaint, *inter alia*,

---

[20] It is unnecessary at this stage of the proceedings to determine whether (a) Bloom retained any interest in BSJV at the time this action was commenced or (b) Johnston ever became a member of BSJV, since it is undisputed that Snider was a member of BSJV at the time this action was commenced and that Snider's citizenship defeats diversity jurisdiction. (See Combined Affirmation and Memorandum of Law of John E. Lawlor, Esq. in Support of Motion to Amend the Complaint ["Lawlor Aff."], ¶ 7.)

to drop BSJV, the "jurisdictional spoiler," as a plaintiff in this action. The Bloom defendants

oppose such an amendment on the basis, *inter alia*: (1) that this action was pending, first in state

court, then in this Court, for almost two (2) years prior to plaintiffs seeking the amendment and

plaintiffs have failed to provide a reasonable explanation for their delay; and (2) that BSJV is the

real party in interest because the "majority" of plaintiffs' causes of action, i.e., their third through

eighth causes of action, are merely derivative in nature.[21]

Rule 21 of the Federal Rules of Civil Procedure provides, in pertinent part, that "the court

may at any time, on just terms, add or drop a party." "Once a party has been dropped under Rule

21, * * * the complaint [is to be read] as if [that party] had never been included." LeBlanc v.

Cleveland, 248 F.3d 95, 99 (2d Cir. 2001); see also E.R. Squibb & Sons, Inc. v. Lloyd's &

Companies, 241 F.3d 154, 163 (2d Cir. 2001). Rule 21 has been interpreted to allow a federal court

to preserve diversity jurisdiction by removing a dispensable non-diverse party from a suit at any

time. Newman-Green, 490 U.S. 826, 832-833, 109 S.Ct. 2218; see also Call Center Technologies,

Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 51 (2d Cir. 2011) (holding that

Rule 21 "allows a court to drop a nondiverse party at any time to preserve diversity jurisdiction,

provided the nondiverse party is not 'indispensable' under Rule 19(b)." (quotations and citations

omitted)).

The Second Circuit has held that:

"A district court's decision to dismiss parties under Rule 21 is circumscribed only

---

[21] As noted above, plaintiffs' fourth cause of action in the original complaint was
asserted against Johnston only and plaintiffs have voluntarily dismissed their claims against
Johnston with prejudice pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.
Accordingly, contrary to the Bloom defendants' contention, the majority of plaintiffs' claims are
not purported to be derivative in nature, i.e., the Bloom defendants contend that only five (5) out
of plaintiffs' remaining twelve (12) causes of action are derivative in nature.

by the 'equity and good conscience test' of Rule 19(b). Rule 19(b) commands a district court to dismiss an action when it is impossible to have the participation of an indispensable party. * * * [T]he district court should take a 'flexible approach' under Rule 19(b) when deciding whether parties are indispensable[.] * * * [V]ery few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible."

Universal Reinsurance Co., Ltd. v. St. Paul Fire and Marine Ins. Co., 312 F.3d 82, 87 (2d Cir. 2002). "[T]he question always is, or should be, when objection is taken to the jurisdiction of the court by reason of the citizenship of some of the parties, whether . . . they are indispensable parties, for if their interests are severable and a decree without prejudice to their rights may be made, the jurisdiction of the court should be retained and the suit dismissed as to them." Grupo Dataflux, 541 U.S. at 572, 124 S. Ct. 1920 (quoting Horn v. Lockhart, 84 U.S. 570, 21 L. Ed. 657, 17 Wall. 570, 579 (1873)).

Rule 19 of the Federal Rules of Civil Procedure "sets forth a two step inquiry for determining whether an action must be dismissed for failure to join an indispensable party." Associated Dry Goods Corp. v. Towers Financial Corp., 920 F.2d 1121, 1123 (2d Cir. 1990); see also Viacom International, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000). "The first prong of the test focuses on whether the party should be joined if feasible." Associated Dry Goods, 920 F.2d at 1123; see also Viacom, 212 F.3d at 724 (holding that under the first prong of the test, "the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a).") Rule 19(a)(1) provides as follows:

"A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise

23

inconsistent obligations because of the interest."

Rule 19(a) "states the principles that determine when persons or entities must be joined in a suit * * * [and] instructs that nonjoinder even of a required person does not always result in dismissal." Republic of Philippines v. Pimentel, 553 U.S. 851, 862, 128 S. Ct. 2180, 171 L. Ed. 2d 131 (2008).

"[W]here the court makes a threshold determination that a party is necessary under Rule 19(a), and joinder of the absent party is not feasible for jurisdictional or other reasons * * *, the court must finally determine whether the party is 'indispensable' [pursuant to Rule 19(b)]." Viacom, 212 F.3d at 725. Rule 19(b) provides as follows:

> "If a person who is required to be joined [under Rule 19(a)(1)] cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Thus, "[w]here joinder is not feasible [under Rule 19(a)], the question whether the action should proceed turns on the factors outlined in subdivision (b)." Republic of Philippines, 553 U.S. at 862, 128 S. Ct. 2180. "If the court determines that a party is indispensable, then the court must dismiss the action pursuant to Rule 19(b)." Viacom, 212 F.3d at 725. However, "[u]nless Rule 19(a)'s threshold standard is met, the court need not consider whether dismissal under Rule 19(b) is warranted." Associated Dry Goods. 920 F.2d at 1123; see also Jonesfilm v. Lion Gate International, 299 F.3d 134, 139 (2d Cir. 2002) ("A party cannot be indispensable unless it is a 'necessary party' under Rule 19(a).") Viacom, 212 F.3d at 724 ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under Rule 19(b).")

i.    Is BSJV a Necessary Party under Rule 19(a)?

The threshold inquiry, therefore, is whether BSJV is a necessary party to this action pursuant to Rule 19(a).

"Although indispensability under Rule 19 is a question of federal law, state law determines the nature of the interests of all the individuals concerned." HB General Corp. v. Manchester Partners, L.P., 95 F.3d 1185, 1192 (3d Cir. 1996); see also Fed. R. Civ. P. 17(b)(3) (providing, in relevant part, that for all parties other than an individual or corporation, the capacity to sue or be sued is determined "by the law of the state where the court is located.") Under New York law, "the legal consequences of a joint venture are equivalent to those of a partnership * * *." Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908, 531 N.E.2d 629 (1988); see also Tehran-Berkeley Civil and Environmental Engineers v. Tippetts-Abbett-McCarthy-Stratton, 888 F.2d 239, 243 (2d Cir. 1989) (holding that under New York law, the legal consequences of a joint venture are almost identical with that of a partnership). Accordingly, it is proper to apply partnership law principles to resolve disputes between members of a joint venture. See Gramercy Equities, 72 N.Y.2d at 565, 534 N.Y.S.2d 908; see also Scholastic, Inc. v. Harris, 259 F.3d 73, 84 (2d Cir. 2001) ("Under New York law, joint ventures are governed by the same legal rules as partnerships * * * because a joint venture is essentially a partnership for a limited purpose.")

Under New York law, "a joint venture may not assert the claims of its members and its members may not assert claims on its behalf." Intellivision v. Microsoft Corp., 784 F. Supp. 2d 356, 366 (S.D.N.Y. 2011); see also M.I.F. Securities Co. v. R.C. Stamm & Co., 94 A.D.2d 211, 216, 463 N.Y.S.2d 771 (1st Dept. 1983), aff'd, 60 N.Y.2d 936, 471 N.Y.S.2d 84, 459 N.E.2d 193 (N.Y. 1983) ("The jural rights of a partnership, as an entity, are separate and distinct from those of its partners and employees, as individuals. * * * A partnership may not assert the claim of an

individual partner * * * any more than an individual partner may assert the claim of the partnership." (citations omitted)). It is essentially undisputed that in a derivative action commenced by a partner or joint venturer, the partnership or joint venture is a necessary party under New York law. See DDR Construction Services, Inc. v. Siemens Industry, Inc., 770 F. Supp. 2d 627, 661 (S.D.N.Y. 2011) (holding that under New York law, a co-partner alleging conversion directly injurious to the partnership must bring that claim derivatively."); World Touch Gaming, Inc. v. Massena Management, LLC, 117 F.Supp.2d 271 (N.D.N.Y. 2000) (finding that the action could not proceed without the defendants over whom the court lacked subject matter jurisdiction because the basis of the action was the agreements between the plaintiff and those defendants and it was those defendants that allegedly breached the agreements); Lenz v. Associated Inns and Restaurants Co. of America, 833 F. Supp. 362, 378 (S.D.N.Y. 1993)("[I]n a derivative action brought by a limited partner, the limited partnership is an indispensable party."); Chamarac Properties, Inc. v. Pike, No. 86 Civ. 7919, 1993 WL 427137, at * 5 (S.D.N.Y. Oct. 19, 1993) ("In any derivative action, the limited partnership on whose behalf suit is brought is an indispensable party under [Rule 19].");  Heinz v. Simon & Flynn, Inc., 444 F. Supp. 114, 117 (S.D.N.Y. 1978) (holding that the "[p]laintiff, as an individual, cannot assert his entitlement to an accounting and the recovery of [converted] sums free of the joint venture. [Since] [b]y plaintiff's own admission he would be entitled to but a share of th[o]se funds, * * * any claim to the monies and recovery would be of necessity on behalf of the joint venture.") Thus, if any of plaintiffs' claims are derivative in nature, BSJV is a necessary party under Rule 19(a).

"[I]n determining whether a claim is derivative or direct, the court must look to the nature of the wrongs alleged in the body of plaintiff's complaint * * *." Lenz, 833 F. Supp. at 379. "In * * * the * * * partnership context, the determination of whether a suit is derivative or direct turns on the

nature of the injury alleged and the entity which sustains the harm." Id. at 379-80; see also Curley

v. Brignoli, Curley & Roberts Associates, 915 F.2d 81, 82-83 (2d Cir. 1990) ("Under New York

law, the question whether a suit should be brought * * * derivatively turns on the relief sought.")

"[T]he critical question posed by the direct injury test is whether the damages a plaintiff sustains are

derivative of an injury to a third party. If so, then the injury is indirect; if not, it is direct." Excimer

Associates, Inc. v. LCA Vision, Inc., 292 F.3d 134, 139-40 (2d Cir. 2002) (per curiam) (quoting

Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc., 191 F.3d 229, 238-39 (2d Cir.

1999)); see also Lenz, 833 F. Supp. at 380 ("[T]o bring a direct representative action against a

general partner, a limited partner must demonstrate either direct injury or an injury that exists

independently of the partnership.") "[W]here the plaintiff's injury is direct, the fact that another

party [such as the joint venture itself] may also have been injured and could assert its own claim

does not preclude the plaintiff from asserting its claim directly." Excimer, 292 F.3d at 140.

Plaintiffs' claims pertaining to the sale of securities (first and second causes of action), to

the breach of a promissory note by Feingold (eleventh cause of action in original complaint and

tenth cause of action in proposed amended complaint), to "financial elder abuse" (twelfth cause of

action in original complaint and eleventh cause of action in proposed amended complaint) and to

Feingold's alleged breach of his fiduciary duty as Lugli's investment advisor (thirteenth cause of

action in original complaint and twelfth cause of action in proposed amended complaint), do not

involve BSJV, and are clearly personal claims which plaintiffs can assert directly. Moreover, the

Bloom defendants effectively concede that plaintiffs' ninth and tenth causes of action are not

derivative in nature, insofar as they only contend that BSJV is the real party in interest with respect

to plaintiffs' third through eighth causes of action.[22]

The subject of plaintiffs' remaining causes of action involves defendants' purported conduct in inducing plaintiffs to enter into a joint venture with Bloom and to overpay for the subject property, solely for defendants' personal gain. The fifth and sixth causes of action asserted in the original complaint, and the fourth and fifth causes of action asserted in the proposed amended complaint, respectively, seek damages on the basis that Bloom, the Feingold defendants and LaDonna fraudulently induced, and/or conspired to fraudulently induce, plaintiffs, *inter alia*, to enter into the Joint Venture Agreement and related Amendments, (Compl., ¶¶ 12.4, 13.5; Amend. Compl., ¶¶ 92, 103). Clearly, the alleged fraud was directed solely towards plaintiffs and it was they who sustained any damages resulting from such fraud. Moreover, under New York law, partners may assert a direct claim of fraud in the inducement, i.e., an individual investor may have a direct claim for an investment made in reliance on a fraud so long as he or she seeks to recover only the actual loss he or she sustained as a direct result of the fraud. See Continental Cas. Co. v. PricewaterhouseCoopers, LLP, 15 N.Y.3d 264, 270-71, 907 N.Y.S.2d 139, 933 N.E.2d 738 (N.Y.

---

[22] The tenth cause of action in the original complaint, and ninth cause of action in the proposed amended complaint, seeks judgment declaring the rights and duties of the parties under the Withdrawal Amendment. (Compl., ¶¶ 17.3-17.5). Though BSJV was a subject of the Withdrawal Amendment, it was not a party to the Withdrawal Amendment and has no obligations thereunder. (Compl., Ex. E). Moreover, although the Withdrawal Amendment required Bloom to continue to represent Lugli, Northwestern and BSJV "in order to provide all legal representation necessary to complete the project with no fees to be charged," (Id.), plaintiffs do not seek relief based upon any breach of Bloom's duty to continue its representation of BSJV. Moreover, the ninth cause of action in the original complaint, and the eighth cause of action in the proposed amended complaint, seeks disgorgement by defendants of all funds received by them from plaintiffs "under false pretenses and in breach of fiduciary duties owed to plaintiffs." (Compl., ¶¶ 16.2-16.3, Amend. Compl., ¶¶ 115-116). Since the funds received by defendants and sought to be disgorged were paid by plaintiffs, the relief sought is personal to them and BSJV would not be entitled to receive any such disgorged funds. Accordingly, the ninth and tenth causes of action in the original complaint, and eighth and ninth causes of action in the proposed amended complaint, are not derivative in nature and BSJV is not a necessary party with respect to those causes of action.

2010). Accordingly, contrary to the Bloom defendants' contention, plaintiffs' fifth and sixth causes of action in the original complaint, and fourth and fifth causes of action in the proposed amended complaint, are not derivative in nature and BSJV is not a necessary party with respect to those causes of action.[23]

Moreover, the third cause of action asserted in both the original complaint and proposed amended complaint seeks damages "consist[ing] of the difference between [the] fair market value of the [subject] property and all amounts paid to BLOOM [by plaintiffs]* * *," (Compl., ¶ 10.12), on the basis, *inter alia*, that Bloom breached the Joint Venture Agreement and related Amendments and "breached the fiduciary duties created under the [Joint Venture Agreement and related Amendments] * * * by virtue of * * * the failure to perform all duties required of him under either the joint venture agreement, the withdrawal agreement or implied at law." (Compl., ¶ 10.9, Amend. Compl., ¶ 85). Since the relief sought by plaintiffs under that cause of action relates only to plaintiffs' payment of money to defendants for purchase of the subject property by Northwestern, it is clearly not derivative of any injury suffered by BSJV. Accordingly, contrary to the Bloom defendants' contention, plaintiffs' third cause of action is also not derivative in nature and BSJV is not a necessary party with respect to that cause of action either.

The eighth cause of action asserted in the original complaint, and the seventh cause of action asserted in the proposed amended complaint seek rescission, *inter alia*, of the Joint Venture Agreement and related Amendments "[o]n account of frauds and misrepresentations [by defendants]

---

[23] Likewise, plaintiffs may also directly assert the seventh cause of action in the original complaint, and the sixth cause of action in the proposed amended complaint, which seek damages on the alternative basis that Bloom and the Feingold defendants made negligent misrepresentations, *inter alia*, "in making the promises of future services relating to the formation of [BSJV]," (Compl., ¶ 14.2; Amend. Compl., ¶107), because the alleged misrepresentations were made directly to them and it was they who sustained any damages resulting therefrom.

in * * * the making of the Joint Venture Agreement" and related Amendments, and repayment of funds paid by plaintiffs pursuant to those agreements. (Compl., ¶¶ 15.2, 15.4, Amend. Compl., ¶¶ 110, 112). Under New York law, a claim for rescission may be brought directly by a partner, <u>see</u> N.Y. Partnership Law § 63(1) ("The court shall decree a dissolution[] [o]n application by or for a partner * * *."), and the other relief sought is clearly personal to plaintiffs since it was they, and they alone, who paid the money to defendants which they seek to recoup. Accordingly, contrary to the Bloom defendants' contention, plaintiffs' eighth cause of action is not derivative in nature and BSJV is not a necessary party with respect to that cause of action as well.

In light of the nature of the relief sought by plaintiffs in this action, the court can accord complete relief among the existing parties to this action in the absence of BSJV and BSJV's ability to protect any interests it may have relating to the subject of this action will not be impaired or impeded as a result of its absence in this action, particularly since all members of BSJV are before this Court in either this case, or a related case pending under docket number 10-cv-4026 which has been joined for trial with this case. The Second Circuit has held that, for purposes of Rule 19(a):

> "[i]t is not enough * * * for a third party to have an interest, even a very strong interest, in the litigation. Nor is it enough for a third party to be adversely affected by the outcome of the litigation. Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired *because of* that party's absence from the litigation."

MasterCard International Inc. v. Visa International Service Association, Inc., 471 F.3d 377, 387 (2d Cir. 2006) (emphasis in original). Nor would the absence of BSJV leave an existing party subject to a substantial risk of incurring inconsistent obligations because of that interest, particularly since this action is devoid of any direct obligation or duty owed to or from BSJV that was breached or violated upon which any future action by or against BSJV may be based.

For all of the above reasons, BSJV is not a necessary party who must by joined in this action

30

"if feasible" under Rule 19(a).[24] Therefore: (1) the branch of plaintiffs' motion seeking to amend the complaint to drop BSJV as a plaintiff is granted and the claims asserted on behalf of BSJV in this action are dismissed without prejudice pursuant to Rule 41(a)(2); and (2) the branch of the Bloom defendants' cross motion seeking dismissal of this action pursuant to Rule 12(b)(7) of the Federal Rules of Civil Procedure is denied. Since the complaint is to be read as if BSJV had never been included as a plaintiff, see LeBlanc, 248 F.3d at 99, there is complete diversity among the remaining parties to this action. Accordingly, the branch of the Bloom defendants' cross motion seeking dismissal of this action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure is denied.

C.     Rule 25(a)

Rule 25(a)(1) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[i]f a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party * * *" within ninety (90) days after service of a statement noting the death. See Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 469-70 (2d Cir. 1998). Plaintiffs' motion was filed on April 15, 2011, within ninety (90) days after Northwestern had filed the suggestion of Feingold's death on January 18, 2011, and no party has opposed the branch of plaintiffs' motion seeking to amend the complaint to substitute the Estate of Harry Feingold for Feingold, deceased, pursuant to Rule 25(a). Accordingly, that branch of plaintiffs' motion is granted and the Estate of Harry Feingold is hereby substituted for Feingold, deceased, pursuant to Rule 25(a) of the Federal Rules of Civil Procedure.

---

[24] Accordingly, it is unnecessary to consider the factors set forth in Rule 19(b) to determine BSJV's dispensability as a party to this action.

III.   Conclusion

For the reasons stated herein, plaintiffs' motion for leave to amend the complaint is granted in its entirety and the Bloom defendants' cross motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(7) of the Federal Rules of Civil Procedure is denied in its entirety. The Clerk of the Court shall amend the caption of this action in accordance with this Order.

All pretrial matters in this action are respectfully referred to the Honorable A. Kathleen Tomlinson, United States Magistrate Judge. A pretrial conference in this case, which has been joined for trial with the related case <u>Snider v. Lugli, et ano.</u>, No. 10-cv-4026, is scheduled to be held before me on July 11, 2012 at 11:15 a.m., at which all parties from both actions are to be present. The Clerk of the Court shall serve a copy of this order upon all parties to both this action and the related action under docket number 10-cv-4026.

SO ORDERED.

s/ Sandra J. Feuerstein

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: May 22, 2012
       Central Islip, N.Y.